UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YAMILA VEGA,

     Plaintiff,

v.                                         Case No:   2:15-cv-280-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Yamila Vega's Complaint (Doc. 1) filed on May 1, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    I.    **Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

        A.  **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2),

1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### B.  Procedural History

On September 22, 2011, Plaintiff filed applications for disability insurance benefits and

supplemental security income asserting an onset date of May 1, 2009.  (Tr. at 140, 148).

Plaintiff's applications were denied initially on December 14, 2011, and on reconsideration on

February 2, 2012.  (Tr. at 64, 75-76, 79, 89).  A hearing was held before Administrative Law

Judge ("ALJ") Hortensia Haaversen on July 19, 2013.  (Tr. at 30-49).  The ALJ issued an

unfavorable decision on September 4, 2013.  (Tr. at 12-29).  The ALJ found Plaintiff not to be

under a disability since September 22, 2011, the date her application for supplemental security

income was filed.  (Tr. at 24).

On March 12, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-

8).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on May 1, 2015.

Defendant filed an Answer (Doc. 14) on July 23, 2015.  Both parties filed memoranda in support

of their positions.  (Docs. 19, 22).  The parties consented to proceed before a United States

Magistrate Judge for all proceedings.  (*See* Doc. 18).  This case is ripe for review.

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant

has proven that she is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891

(11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely
on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1,
2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be
cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) can perform other work of the sort found in the national economy.  *Packer*, 542 F. App'x at 891 (citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

In this case, the ALJ made no finding that Plaintiff met the insured status requirements and, thus, only evaluated Plaintiff's claim for supplemental security income.  (*See* Tr. at 18).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 22, 2011, the date of Plaintiff's application for supplemental security income.  (Tr. at 20).  At step two, the ALJ found that Plaintiff suffered from the following severe impairment:  degenerative disc disease.  (Tr. at 20).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  (Tr. at 21).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "the full range of medium work as defined in 20 C.F.R. § 416.967(c)."  (Tr. at 21).  The ALJ specifically stated that Plaintiff "can lift and carry up to 50 pounds occasionally and 25 pounds frequently; and she can sit, stand, or walk for six hours in an eight-hour workday."  (Tr. at 21-22).  The ALJ based her opinion on the State agency (DDS) medical consultant Sunita Patel, M.D. dated February 1, 2012.  (Tr. at 22 (citing Tr. at 72)).

At step four, the ALJ determined that Plaintiff is able to perform her past relevant work as a Housekeeper, DOT code 323.687-014, light exertion, and unskilled with specific vocational preparation (SVP) of 2.  (Tr. at 24).[2]  The ALJ stated that even though she found Plaintiff's mental impairment to be non-severe, the vocational expert ("VE") testified that "an additional limitation of simple and unskilled work would not preclude performance of these duty jobs." (Tr. at 24).  The ALJ stated that "[i]n comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that the [Plaintiff] is able to perform it as actually and generally performed."  (Tr. at 24).  The ALJ further determined that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*.  (Tr. at 24).  Because the ALJ determined that Plaintiff could perform her past relevant work, the ALJ did not make any findings for step five.  (*See* Tr. at 24).  The ALJ concluded that Plaintiff was not under a disability since September 22, 2011, the date her application for supplemental security income was filed.  (Tr. at 24).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401;

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as the finder of fact,

and even if the reviewer finds that "the evidence preponderates against" the Commissioner's

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932

F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;

*accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize

the entire record to determine reasonableness of factual findings).

## II.   Analysis

Plaintiff argues three issues on appeal:

1. The ALJ erred by finding that Vega does not have a severe mental impairment within the meaning of the Act because substantial evidence does not support the conclusion that the impairments are only a "slight abnormality" with a minimal effect of Vega's ability to work.

2. The ALJ erred by failing to consider, or even mention Plaintiff's medically determinable knee impairment and failed to consider the side effects from her medications in assessing Plaintiff's work capacity, in violation of SSR 96-8p.

3. The ALJ erred by failing to obtain testimony from a vocational expert and, instead, relying on a mechanical application of the Medical-Vocational Guidelines.

(Doc. 19 at 5-15). The Court addresses each issue in turn.

### A.  Plaintiff's Mental Impairments

Plaintiff first argues that the ALJ erred in finding that she does not have severe mental

impairments. (Doc. 19 at 5). Specifically, Plaintiff argues that her medically determinable

impairments of affective disorder and anxiety are clearly reflected in the record. (*See id.* at 7). Plaintiff also states that the ALJ erred by relying on the opinion of the non-examining State agency medical consultant Dr. B. Lee Hudson to support her finding that Plaintiff's mental impairments are non-severe because the opinion was rendered "prior to the vast majority of the evidence of record and more than 19 months prior to the ALJ decision." (*Id.* at 9 (citing Tr. at 70). Additionally, Plaintiff argues that the ALJ erred by giving little weight to Plaintiff's treating physicians and also her Global Assessment of Functioning ("GAF") score. (*Id.* at 10). Thus, Plaintiff argues that "the ALJ's finding that [Plaintiff] does not have a severe medically determinable mental impairment is not supported by substantial evidence and reversal of the Commissioner's decision is appropriate." (*Id.*).

Defendant, however, argues that substantial evidence supports the ALJ's findings. (Doc. 22 at 5). Defendant specifically points to Plaintiff's testimony and the medical records in support of the ALJ's findings. (*See id.* at 5-6). Additionally, although Defendant acknowledges that there were subsequent records after Dr. Hudson's opinion, Defendant argues that those subsequent records showed that "Plaintiff's symptoms improved when she was compliant with medication." (*Id.* at 6 (citing Tr. at 23, 256, 281, 283, 285, 312)). Defendant further argues that Plaintiff's treatment notes after the consultants' opinions included similar findings. (*Id.* at 7 (citing Tr. at 300-02, 304-05, 308-09, 312-17, 373-75)). Defendant argues, therefore, that Plaintiff "fails to show her mental condition significantly deteriorated after the consultants gave their opinions." (*Id.*). Additionally, Defendant argues that the ALJ was correct to reject the GAF scores because the Commissioner has determined that GAF scores are unreliable. (*Id.* at 8-9). Thus, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe. (*Id.* at 10). Defendant contends, moreover, that the ALJ

did not err by giving greater weight to the State agency consultant rather than Plaintiff's treating physicians.  (*See id.* at 9-10).

Finally, Defendant argues that "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."  (*Id.* at 10 (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Defendant states that "[t]his is because, once the ALJ proceeds beyond step two, she is required to consider the claimant's entire medical condition, including impairments she determined were not severe."  (*Id.* (citing *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011)). Defendant states that the ALJ "credited Plaintiff with a severe impairment at step two, which is all she was required to do."  (*Id.*).  Thus, because the ALJ considered Plaintiff's severe and non-severe impairments together with the "'entire record' and 'all symptoms' to the extent they were consistent with the record evidence," Defendant argues that the ALJ did not err.  (*Id.* at 10-11).

The Court notes that, at step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months.  *See* 20 C.F.R. §§ 404.1505(a).  This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  *Jamison*, 814 F.2d at 588.  While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not.  *Id.*  If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three.  *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ made a determination that Plaintiff suffered from the following severe impairment:  degenerative disc disease.  (Tr. at 20).  Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe.  *See Heatly*, 382 F. App'x at 825.  The only requirement is that the ALJ considered Plaintiff's impairments in combination, whether severe or non-severe.  *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe.  Specifically, in making her RFC determination, the ALJ stated that:

> the undersigned *has considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p.  The undersigned *has also considered opinion evidence* in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. at 22) (emphasis added).

Moreover, the Court notes that the ALJ specifically found that Plaintiff's medically determinable mental impairments of affective disorder and anxiety were not severe.  (Tr. at 20).  In doing so, the ALJ specifically considered the medical evidence of record regarding Plaintiff's

symptoms.  Additionally, the Court notes that the ALJ specifically discussed the effects of Plaintiff's mental impairments on her ability to work in the RFC assessment.  (Tr. at 22-24).  Based on these statements, the Court concludes that the ALJ considered all of Plaintiff's impairments, whether severe or not, when she considered the evidence of record.

In this case, regardless of whether the ALJ erred in her conclusion that Plaintiff's mental impairments were non-severe, the record demonstrates that the ALJ considered Plaintiff's mental impairments in combination with Plaintiff's other impairments.  Therefore, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's mental impairments are severe, or if she did err, the error was harmless.  *See Heatly*, 382 F. App'x at 825.

Additionally, to the extent that Plaintiff argues that the ALJ erred by failing to give controlling weight to Plaintiff's treating physicians or the GAF score regarding Plaintiff's mental impairment, as will be explained in greater detail Part D *infra*, the Court finds that the ALJ's assessments regarding Plaintiff's mental impairments are supported by other substantial medical evidence of record.  Accordingly, good cause exists to give less weight to the opinions of Plaintiff's treating physicians and the GAF score.  *See Phillips*, 357 F.3d at 1240-41.

### B.  Plaintiff's Knee Impairment

Plaintiff next argues that the ALJ erred by failing to consider, or even mention Plaintiff's medically determinable knee impairment in assessing Plaintiff's work capacity.  (Doc. 19 at 10).  Plaintiff argues that the testimonial and medical evidence demonstrates that Plaintiff has severe knee impairments.  (*Id.* at 11-12).  Despite this evidence, Plaintiff argues that "the ALJ completely ignored the condition at 'step two' of the sequential evaluation process," and, thus, Plaintiff's knee impairments were "not considered at subsequent steps nor in formulating the RFC assessment."  (*Id.* at 12).  Accordingly, Plaintiff argues that "[t]he ALJ's failure to properly

consider this condition renders the RFC and credibility assessments fatally flawed and unsupported by substantial evidence." (*Id.*).

Defendant, however, argues that "[t]he ALJ's decision shows she explicitly considered Plaintiff's testimony she had knee pain" in her RFC analysis. (Doc. 22 at 11). Additionally, as with Plaintiff's mental impairments, Defendant argues that "the finding of any severe impairment is enough to satisfy step two." (*Id.* at 11 n.2 (citing *Heatly*, 382 F. App'x at 824-25; *Jamison*, 814 F.2d at 588)). Defendant argues that because "the ALJ credited Plaintiff with a severe impairment and moved on in the sequential evaluation process, the ALJ did not err at step two." (*Id.*). Defendant further argues that "Plaintiff fails to show her knee impairment caused greater limitations than the ALJ's RFC finding." (*Id.*). Thus, Defendant argues that the ALJ's RFC findings were "explicit and supported by citation to specific evidence" and that substantial evidence supports the ALJ's RFC findings that Plaintiff could perform medium work. (*See id.* at 14).

As stated above, the ALJ made a determination that Plaintiff suffered from the following severe impairment: degenerative disc disease. (Tr. at 20). Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment at step two, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. The only requirement is that the ALJ considered Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe. (*See* discussion *supra*; Tr. at 22). The Court notes that the ALJ specifically considered the medical and testimonial evidence of record regarding Plaintiff's history of knee pain. (Tr. at 22-24). Further, the record shows that the ALJ

specifically considered Plaintiff's knee impairments when making her RFC determination that Plaintiff could perform medium work.  (*See* Tr. at 22-24).

Based on these statements, the Court concludes that the ALJ considered all of Plaintiff's impairments, whether severe or not, when she considered the evidence of record.  Thus, regardless of whether the ALJ erred in her conclusion that Plaintiff's knee impairment was non-severe, the record demonstrates that the ALJ considered Plaintiff's knee impairment in combination with Plaintiff's other impairments.  Therefore, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's knee impairments are severe, or if she did err, the error was harmless.  *See Heatly*, 382 F. App'x at 825.

### C.  Side Effects from Plaintiff's Medication

Plaintiff also argues that "[t]he ALJ is required to consider side effects from medications in formulating the RFC and determining a claimant's ability to work."  (Doc. 19 at 12).  Plaintiff argues that the "side effects of medication alone can render a claimant disabled or at least contribute to disability."  (*Id.* at (citing *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981))).  Here, Plaintiff argues that she "indicated that various medications cause her to be dizzy and drowsy."  (*Id.* (citing Tr. at 183)).  Thus, "the ALJ's failure to properly consider side effects from medications renders the RFC and credibility assessments unsupported by substantial evidence."  (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's RFC and credibility assessments.  (Doc. 22 at 14).  Specifically, Defendant argues that Plaintiff did not show that her alleged side effects from her medication caused greater limitations than the ALJ's RFC finding that Plaintiff could perform medium work.  (*See id.* at 13).  Defendant argues that "[i]n determining whether a claimant's impairments limit a claimant's ability to work, the ALJ

11

considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms."  (*Id.* (citing 20 C.F.R. § 416.929(c)(3)(iv))).

In this case, Defendant states that while Plaintiff stated that her medication caused dizziness and drowsiness, Plaintiff was not able "to identify any side effects at her hearing when asked what side effects she had, if any."  (*Id.* (citing Tr. at 39)).  Defendant further argues that "[i]t is not enough for Plaintiff simply to allege side effects, she must introduce evidence supporting her claim that her medications cause side effects."  (*Id.* (citing *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010)).  Moreover, Defendant states that the ALJ "appropriately noted that the overall medical evidence showed Plaintiff had no side effects from her medication."  (*Id.* at 14 (citing Tr. at 23)).  Thus, Defendant argues that "[t]he ALJ properly considered the relevant medical and other evidence in determining Plaintiff's RFC, including evidence regarding . . . if there were any side effects from her medication."  (*Id.*).  Thus, Defendant argues that the ALJ's "credibility and RFC findings were both explicit and supported by citation to specific evidence" and that "[s]ubstantial evidence supports the ALJ's RFC and credibility findings."  (*Id.*).

On this issue, Plaintiff cites *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981) for the proposition that the "side effects of medication alone can render a claimant disabled or at least contribute to disability."  (Doc. 19 at 12).  The Court finds here, however, that Plaintiff's reliance on *Cowart* is misplaced.  *See Foreman v. Astrue*, No. 8:09-cv-932-T-24AEP, 2010 WL 3292810, at *4 (M.D. Fla. Aug. 3, 2010), *report and recommendation adopted,* No. 8:09-cv-932-T-24-AE, 2010 WL 3292815 (M.D. Fla. Aug. 19, 2010) (explaining that *Cowart* is about the ALJ's duty to fully develop the record, not for determining if a claimant is disabled due to the side effects of medication).  In *Cowart*, the Eleventh Circuit found that the ALJ failed to fully

develop the record because he did not elicit testimony or make findings regarding the effect of the claimant's prescribed medications on her ability to work *when the claimant was not represented by counsel*.  *Cowart*, 662 F.2d at 737.  When, as in this case, a claimant is represented by counsel, the Eleventh Circuit has refused to find that failure to inquire further into possible side effects of medication deprived a claimant of a meaningful opportunity to be heard. *See Cherry v. Heckler*, 760 F.2d 1186, 1190-91 (11th Cir. 1985).

Regardless, the Eleventh Circuit has held that "the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled."  *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)).  Rather, a claimant "must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work."  *Id.*

For instance, in *Walker*, the Eleventh Circuit held that "the ALJ applied the correct legal standards and adequately developed the record regarding the effect of [the claimant's] symptoms, including medication side effects, on her ability to work."  *Id.*  There, the Eleventh Circuit noted that "[d]uring the hearing, [the claimant] was asked about her medications and any side effects."  *Id.*  The claimant responded that "the only side effects she experienced were dizziness and headaches."  *Id.*  In that case, the Court noted that the ALJ found the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible.  *Id.* at 367.  Furthermore, the Court noted that nothing in the claimant's "testimony suggested that her headaches and dizziness were severe enough to be disabling either alone or in combination with her other impairments."  *Id.*  Thus, based on those factors, the Court held that "the ALJ was not under a duty to elicit further information about [the claimant's] medication side effects."  *Id.*

In this case, the record shows that the ALJ considered the effects of Plaintiff's medication.  The ALJ specifically stated that "[t]he overall evidence of record shows the claimant has no side effects from her medication."  (Tr. at 23).  In making this finding, the ALJ specifically cited Exhibits 7F and 10F.  (Tr. at 23).  Exhibit 7F, dated December 14, 2011, shows that no side effects were reported for Plaintiff's medications.  (Tr. at 279).  Additionally, Exhibit 10F, dated February 21, 2012 and April 19, 2012, states in two separate places that Plaintiff does not have side effects with her current medication.  (Tr. at 312, 315).  Moreover, in two other places, Exhibit 10F also states that Plaintiff remained stable on her therapeutic regimen.  (Tr. at 314, 317).  Thus, the ALJ's finding that [t]he overall evidence of record shows the claimant has no side effects from her medication" is based upon substantial medical evidence of record.  (*See* Tr. at 23).

Furthermore, as in *Walker*, Plaintiff was represented by counsel, and the ALJ asked Plaintiff at the hearing whether the medications resulted in any side effects.  (Tr. at 39).  Plaintiff responded that she did not know if she had any side effects from her medications.  (Tr. at 39).  Like *Walker*, the ALJ here also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible because they were not supported by the medical evidence of record.  (*See* Tr. at 23).  Moreover, like *Walker*, nothing in Plaintiff's testimony here suggests that the side effects from her medication – dizziness and/or drowsiness – were severe enough to be disabling either alone or in combination with her other impairments.  *See Walker*, 404 F. App'x at 366.  Thus, the ALJ was not under a duty to elicit further information about Plaintiff's medication side effects.  *Id.*

While the Court notes that Plaintiff stated in a pre-hearing Function Report that that her medication caused dizziness and drowsiness (Tr. at 184), Plaintiff has not provided any evidence

that the side effects from her medications preclude her from working.  Moreover, Defendant is also correct that Plaintiff has not provided any evidence that Plaintiff cannot perform medium work.  (*See* Doc. 22 at 14).  Thus, the Court finds that (1) Plaintiff has failed to meet her burden of proving she is disabled, and (2) Plaintiff has failed to "introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work."  *See Walker*, 404 F. App'x at 366.  Therefore, upon consideration, the Court finds that the ALJ's RFC assessment and credibility assessment regarding the side effects of Plaintiff's medication is supported by substantial evidence.  Accordingly, the ALJ's RFC assessment and credibility assessment regarding the side effects of Plaintiff's medication are affirmed, and remand is not warranted on this ground.

### D.  Vocational Expert Testimony

The final issue raised by Plaintiff is that the ALJ erred by failing to obtain testimony from a vocational expert ("VE") and, instead, relied on a mechanical application of the Medical-Vocational Guidelines, known as the Grids.  (Doc. 19 at 13-16).  Plaintiff argues that "'exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a nonexertional impairment that significantly limits basic work skills.'"  (*Id.* at 13 (citing *Foote* 67 F.3d at 1558)).  Plaintiff argues that "once the finding is made that a claimant cannot return to prior work, the burden of proof shifts to the Secretary to show other work the claimant can do."  (*Id.* (citing *Foote* 67 F.3d at 1559)).  Plaintiff argues that "[t]he preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert."  (*Id.* (citing *Foote* 67 F.3d at 1559)).

In this case, Plaintiff notes that the ALJ found that Plaintiff can perform a full range of medium work.  (*Id.* at 14 (citing Tr. at 21)).  Nevertheless, Plaintiff argues that "the evidence from treating providers demonstrates that [Plaintiff] has nonexertional limitations that would erode the range of work she can perform at any given level."  (*Id.*).  Plaintiff points to her knee problems and mental impairments as creating limitations that are not expressed in the ALJ's RFC assessment.  (*See id.*).  Plaintiff argues that "[w]hen nonexertional limitations 'significantly limit basic work skills' that preclude a claimant from performing 'a wide range' of work at a given work level, the ALJ must consult a vocational expert."  (*Id.* (citing *Phillips*, 357 F.3d at 1243)).  Plaintiff argues that the ALJ "failed to adequately consider [Plaintiff's] nonexertional limitations in formulating the residual functional capacity assessment" and that "the ALJ erred by mechanically applying the vocational-medical guidelines despite overwhelming medical evidence that [Plaintiff's] impairments preclude her from performing 'a wide range' of work at the medium level."  (*Id.* at 14-15).  Thus, Plaintiff argues that "the ALJ's finding that Vega could perform the full range of work at the medium level of exertion is not supported by substantial evidence and constitutes harmful error."  (*Id.* at 15).

Defendant disagrees.  Defendant argues that at step four, Plaintiff "bears the burden of demonstrating that she cannot return to her past relevant work."  (Doc. 22 at 15 (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990))).  Defendant states that "[a]n ALJ determines whether a claimant can perform past relevant work by comparing the claimant's RFC with the physical and mental demands of a claimant's past relevant work."  (*Id.* (citing 20 C.F.R. § 416.960(b); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997))).

Defendant further argues that although not required, an ALJ may use a vocational expert at step four to establish a claimant's ability to perform her past relevant work.  (*Id.* (citing 20

C.F.R. § 416.960(b)(2))).  On this point, Defendant notes that "this is not a case where the ALJ relied on the Medical Vocational Guidelines (Grids) to find she was not disabled."  (*Id.*).  Rather, Defendant notes that "the ALJ asked a VE whether a hypothetical claimant with Plaintiff's age, past relevant work, and RFC could perform Plaintiff's past relevant work as a housekeeper/cleaner."  (*Id.* (citing Tr. at 47)).  Defendant states that "[t]he ALJ asked the VE to limit the hypothetical claimant to occasionally lifting/carrying 50 pounds and frequently lifting/carrying 25 pounds; standing/walking and sitting six hours each in an eight-hour workday; and a job that does not require her to communicate in English."  (*Id.* (citing Tr. at 47)).  Defendant further notes that "[w]hile not included in the ALJ's RFC finding, the ALJ also asked the VE to limit the hypothetical claimant to simple and routine tasks."  (*Id.* (citing Tr. at 48)).  Defendant notes that, even with those additional limitations, "the VE testified the hypothetical claimant could perform Plaintiff's past relevant work as a housekeeper/cleaner."  (*Id.* (citing Tr. at 47-48)).  Further, Defendant notes that "[t]he VE also testified Plaintiff's past work as a housekeeper/cleaner was light and unskilled."  (*Id.* (citing Tr. at 47)).  Thus, Defendant reasons that "[i]f someone can do medium work, then he or she can also do sedentary and light work."  (*Id.*).

In this case, Defendant argues that "[w]hile Plaintiff continues to argue that she had greater limitations than the ALJ's RFC finding due to her knee pain and mental impairments, . . . the ALJ's RFC finding is supported by substantial evidence."  (*Id.* at 16).  Thus, Defendant argues that "the ALJ is not required to include limitations in a hypothetical question that she does not find supported by the record."  (*Id.* (citing *Crawford*, 363 F.3d at 1161)).

As an initial matter, the Court notes that Plaintiff argues that "once the finding is made that a claimant cannot return to prior work, the burden of proof shifts to the Secretary to show

other work the claimant can do." (*Id.* (citing *Foote* 67 F.3d at 1559)).  The record here is clear, however, that the ALJ found that Plaintiff *could* return to her past work as a housekeeper.  (Tr. at 24).  Thus, the burden did not shift back to the Commissioner to show what other work that Plaintiff can do.  *See Hines-Sharp*, 511 F. App'x at 915 n.2.

Moreover, Defendant is also correct that although not required to do so, an ALJ may use a VE at step four to establish a claimant's ability to perform her past relevant work.  (Doc. 22 at 15 (citing 20 C.F.R. § 416.960(b)(2))).  The regulations state, in pertinent part:

> *We may use the services of vocational experts* or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need *to help us determine whether you can do your past relevant work*, given your residual functional capacity.  A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work.  In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 416.960(b)(2) (emphasis added).  Nothing in this regulation *requires* the use of a vocational expert.  Rather, the use of a vocational expert at step four is discretionary.  *See Colon ex rel. Colon v. Astrue*, No. 808-cv-1191-T-17TEM, 2009 WL 2997187, at *5 (M.D. Fla. Sept. 18, 2009) ("The use of a vocational expert at step 4 of the sequential analysis is discretionary."), *aff'd sub nom. Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236 (11th Cir. 2011).

Further, as stated above, the scope of the Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts*, 841 F.2d at 1080, and whether the findings are supported by substantial evidence, *Richardson*, 402 U.S. at 390.  When

supported by substantial evidence, the district court will affirm.  *See Edwards*, 937 F.2d at 584

n.3; *Barnes*, 932 F.2d at 1358.  Moreover, when an ALJ's findings are supported by substantial

evidence, an ALJ is not required to include additional non-exertional limitations.  *See Vesy v.*

*Astrue*, 353 F. App'x 219, 223 (11th Cir. 2009) (finding no error when the medical records did

not show that the claimant's symptoms affected her ability to perform light work).

Upon consideration of Plaintiff's testimony and the medical records, the Court finds that

the ALJ's RFC assessment of Plaintiff is supported by substantial evidence.  The Court

specifically addresses Plaintiff's contentions regarding her knee impairments and mental

impairments below.

First, as to Plaintiff's knee impairments, the ALJ specifically noted that while Plaintiff

had a history of right knee pain along with buckling and giving way, Dr. Robert Martinez, M.D.

noted that bracing markedly improved Plaintiff's ability to walk with minimal discomfort.  (Tr.

at 22).  Additionally, the ALJ cited medical records showing that Plaintiff had "no deformities,

no acute distress, has a normal gait and posture" and has "no motor deficits."  (Tr. at 23 (citing

Tr. at 333)).  The ALJ also cited Plaintiff's testimony that she only has pain in her knee "[o]nce

in a while."  (Tr. at 22 (citing Tr. at 41)).  Moreover, the ALJ relied on the opinion the State

agency consultant, Sunita Patel, M.D., who considered records pertaining to Plaintiff's knee pain

in assessing Plaintiff's RFC and opined that Plaintiff could perform medium work.  (Tr. at 23

(citing Tr. at 71-73)).  Upon consideration, these medical records and opinions are substantial

evidence supporting the ALJ's RFC finding regarding Plaintiff's knee impairments and, thus, do

not contradict the finding that Plaintiff can perform medium work.

Additionally, as to Plaintiff's mental impairments, the ALJ cited treatment records from

Lee Mental Health Center stating that Plaintiff had "adequate cognitive ability and fair judgment

and insight." (Tr. at 23 (citing Tr. at 283)). The ALJ further noted that medication appears to help Plaintiff's depression and anxiety. (Tr. at 23 (citing Tr. at 283)). Moreover, as the ALJ noted, even though Plaintiff at one point had reported worsening depression symptoms, Plaintiff admitted that she had ran out of medication at the time of that visit. (Tr. at 23 (citing Tr. at 373)).

Furthermore, the ALJ credited the opinion of Dr. Hudson, Ph.D., who indicated that Plaintiff's mental limitations are not severe. (Tr. at 23 (citing Tr. at 70)). In fact, the ALJ cited Plaintiff's testimony as supporting Dr. Hudson's opinion. (Tr. at 23). For instance, the ALJ cited Plaintiff's testimony at the hearing that indicated that Plaintiff "is able to drive, complete household chores, care for her 12 year-old son, manage money and follow directions" in support. (Tr. at 23). Additionally, the ALJ noted that Plaintiff stated that her panic attacks had decreased to only every three months or so. (Tr. at 23).

Upon consideration, the Court finds that the above-cited medical records and Plaintiff's testimony are substantial evidence that support the ALJ's RFC assessment regarding Plaintiff's mental impairments and, thus, do not contradict the ALJ's finding that Plaintiff could perform medium work.

In this case, even if the Court would have reached a contrary result and even if the Court found that "the evidence preponderates against" the Commissioner's decision, the Court is still bound to the Commissioner's decision when it is supported by substantial evidence. *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358. Here, the ALJ cited specific medical records and Plaintiff's testimony to support her RFC assessment and finding that Plaintiff can perform medium work. (*See* Tr. at 21-24). Thus, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. (*See* Doc. 22 at 16). Because the ALJ's RFC findings are

supported by substantial evidence, the ALJ did not err by failing to include non-exertional limitations in the RFC assessment.  *See Vesy*, 353 F. App'x at 223.

Further, as noted above, nothing in the regulations requires the use of a vocational expert when the ALJ finds that Plaintiff could return to her past relevant work.  *See* 20 C.F.R. § 416.960(b)(2).  In this case, however, it appears the ALJ chose to do so.  In fact, the ALJ's hypotheticals posed additional limitations.  (Tr. at 47-48).  Even with those additional limitations, however, "the VE testified the hypothetical claimant could perform Plaintiff's past relevant work as a housekeeper/cleaner."  (Tr. at 47-48).  Moreover, the ALJ found that the VE's testimony was consistent with the information contained in the DOT.  (Tr. at 24).  Thus, it appears that the ALJ properly relied on the VE in her decision.  Regardless, because the ALJ's RFC assessment is supported by substantial evidence, remand is not warranted for any failure by the ALJ to obtain testimony from a vocational expert.

### III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

Accordingly, **IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 16, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties